WILLIAM L. GROSS, PLAINTIFF IN ERROR, v. JACOB
BUNN, DEFENDANT IN ERROR.    CHARLES F. GROSS, v.
THE SAME.    SUSIE F. GROSS, v. THE SAME.

1.  Assignments.  The voluntary assignment in Illinois by a
    debtor under a statute of that state [Laws 1877, p. 115] of all
    his property, and the presentation and proof of a creditor's
    claim in Illinois, is not a bar to such creditor's right of action
    in Nebraska, there being nothing in the statute of Illinois or
    in the deed of assignment restricting creditors to their respec-
    tive dividends, or suspending any other remedy previously
    open to them.

2. ———: EVIDENCE. Where a debtor makes a voluntary as-
signment of all his property under the statute of a foreign
state, including lands in Nebraska, as well as a deed of said
lands direct to his assignee, and a creditor seeks to recover a
personal judgment in Nebraska, such debtor making a volun-
tary appearance in the action, the sufficiency of such convey-
ances to pass the title of such lands to the assignee has no rele-
vancy in such action, and it is error to admit such deeds in
evidence.

THESE were three cases brought up on error to the
district court of Nemaha county, and were argued to-
gether.   The following facts appear :

January 1, 1878, Jacob Bunn, a banker, of Spring-
field, Illinois, failed, and made a voluntary assignment
to Brown for the benefit of creditors.   Bunn owned
lands in Illinois and Nebraska, and his assignment was
made under the Voluntary Assignment Law of Illinois,
in force July 1, 1877.

This deed of assignment was filed for record in
Sangamon county, Illinois, January 2, 1878; it was
never recorded in Nemaha county, Nebraska.   Janu-
ary 5, 1878, Bunn executed another instrument, in
form a warranty deed, for consideration of one dollar,
conveying to Brown all his lands in Nemaha county.
This instrument was filed for record in Nemaha coun-
ty Jan. 9, 1878.   At the time of his failure Bunn was
indebted to these plaintiffs in the several sums by
them demanded.   Plaintiffs were residents of Illinois.
February 2, 1878, W. L. Gross and C. F. Gross, and
on February 9, 1878, S. L. Gross began suits in attach-
ment in the Nemaha district court against Bunn, and
attached certain of the Bunn lands in that county.
The defendant, Bunn, failing to answer, was defaulted,
and plaintiffs prayed judgment.   Against the objec-
tion of plaintiffs the trial court set aside the defaults
and granted the motion of Brown, as assignee of
Bunn, to intervene and answer.   Brown, as such in-

tervener, answered, claiming to own the lands attached, and set up the general deed of assignment from Bunn of first Jan., 1878, and the deed from Bunn of fifth Jan., 1878, and averred that at the time of the attachment Bunn had no interest in the lands attached, and that plaintiffs had notice. Afterwards, and against the objection of plaintiffs, the trial court allowed Brown to withdraw his answer as intervener, and permitted Bunn to appear and answer. Bunn entered his appearance and answered, admitting the plaintiffs' demands, but alleging that he had, prior to attachment, conveyed the lands to Brown, his assignee, and set up the general deed of assignment, and the deed of fifth Jan., 1878, and notice to the plaintiffs. The testimony showed that Bunn was indebted to plaintiffs as demanded; that plaintiffs had constructive notice of the general assignment, but no actual notice as to the Nemaha county lands; that plaintiffs had filed their claims in the Sangamon county court within the time limited in the Illinois Voluntary Assignment Law; but in their proofs of claim had notified that court of these attachment proceedings in Nemaha county, and claimed the benefit that might accrue to them from said suits. But the testimony did not show that plaintiffs had accepted payment to any extent from the assignee.

On the trial below, before POUND, J., the defendant was permitted, against plaintiffs' objection, to read in evidence the general deed of assignment of first Jan., 1878, and the special instrument of fifth Jan., 1878, and the court gave judgment for defendant, and denied plaintiffs' motion for a new trial.

*Wm. L. Gross* and *E. F. Warren*, for plaintiffs in error.

*J. L. Mitchell*, for defendant in error.

COBB, J.

The only question properly litigated in this case, as it appears to me, is as to the effect of the assignment by the defendant, and the presentation and proof of his claim in the county court of Sangamon county, Illinois, by the plaintiff. Did these acts bar the plaintiffs' right of action in this state? This is certainly the only question presented in such a manner as to enable this court to pass upon it, although it is obvious that counsel on both sides sought to litigate the title to the real estate, levied upon by the order of attachment in the case.

The question as to whether the title to the said lands passed from Bunn to his assignee by virtue of the deed of assignment, and the other deed made in aid thereof, or either of them, might have been material on the question of jurisdiction, had there been no appearance on the part of the defendant. But since he did appear and answer in the case, the question of the sufficiency of such conveyances, executed in the state of Illinois, to pass title to real property in this state, can have no relevancy upon the question of the plaintiffs' right to a personal judgment against the defendant Bunn.

In the case of *Haskins et al. v. Alcott & Horton,* 13 Ohio State, 210, the court say: "The answer assumes that the mere execution of a legal and valid assignment by the debtor firm and its several members, of all the joint and separate property, for the benefit of all its creditors, and its acceptance by the assignee, deprives the creditors of such firm of all the remedies previously open to them for the collection of their claims; or at least suspends all such remedies until the trust created by the assignment has been discharged by the realization and distribution of the

trust fund.   The general principle certainly is, that a debtor can not change his relations to his creditors by a voluntary assignment.   *   *   To have this effect, there must have been an assent amounting to an acceptance of the assignment by the particular creditor whose right of action is thus barred or suspended. This assent may be manifested not only by the written or verbal acceptance of the creditor, but also, it is said, by actually receiving the benefit, or by claiming such benefit, or by taking legal measures to obtain it. *   *   It is very questionable, however, whether the mere receipt of partial payments from the assignee, out of the trust fund, where the terms of the assignment or of the statute do not expressly bind the creditor to delay suit, will bar the creditor from suing until the trust is terminated.   *   *   The bar, if any, must arise out of a contract or statutory inhibition, express or implied."

The said court refer to the case of *Bank of Bellows Falls v. Deming*, 17 Vt., 366, which case is quite in point.   In the last mentioned case, in the trial court the defendant offered evidence tending to prove that the plaintiff knew the terms of said assignment ; that about three months after the execution of the assignment the plaintiff's agent, having the possession of the note declared upon, was in the store of the assignees, where they were doing business as such assignees, and that the assignees made to said agent (Fullerton) a payment, as a portion of the plaintiff's dividend, on said note, and that said payment was made from the trust funds, and was endorsed at the time upon the note by Fullerton, who knew all of the facts at the time.   This was prior to the commencement of the suit, and the assignees had not at the time of the commencement of the action rendered an account of their doings under said assignment.   The testimony

was excluded; verdict for plaintiff and error to the supreme court. The court, by C. J. Williams, say: "We can see no reason for reversing the judgment of the county court. There is nothing in the assignment which bound the creditors to delay commencing suits, neither is there any such agreement to delay implied in the fact of the plaintiff's accepting and receiving the amount paid to them by the assignees as trustees." The judgment was affirmed.

There is nothing in the Illinois statute on the subject of voluntary assignments, etc., nor in the deed of assignment of the defendant, which, on the face of either or in the spirit of either, restricts the creditors to their respective dividends under the assignment, or either bars or suspends any other remedy previously open to them, even in the courts of that state.

In the case at bar, it appears from the stipulation and exhibits thereto attached that the attachment suit was commenced in this state before the presentation and filing of the plaintiffs' claim in the county court of Sangamon county, Illinois, and that attached to said claim in the county court is a statement of the commencement of proceedings on the same claim in the district court of Nemaha county, Nebraska, and the attaching of defendant's lands thereon; so that if it be the law that the plaintiffs should be required to elect whether to take under the assignment in Illinois, or to follow up his attachment proceedings in this state, and cannot pursue both remedies at the same time, I do not see why the whole matter may not be fought out on Illinois soil, and decided by the court controlling the distribution of the effects under the assignment. But in the case of *Hogg v. Charton*, 25 Pa. State, 200, the first case cited by defendant in error, and in which case the principal question was "whether the plaintiff below was entitled to an action

of debt brought upon a foreign judgment, where the defendant had failed to file a sufficient affidavit of defense, and where another suit was pending for the same cause of action in the state of New York," the court say : " The supplemental affidavit of the defendant discloses no defense. The plaintiff has a right to seek satisfaction out of funds in the hands of the receiver in New York, and to pursue his remedy against the defendant in this state at the same time. The bill in equity to obtain an application of so much of the funds in New York as shall be sufficient to satisfy the plaintiff's judgment is not a bar to proceedings at law in this state. He may pursue both remedies until he obtain satisfaction from one of them."

Taking the view of this case as above expressed, and confining my consideration solely to the question of the right of the plaintiff to a personal judgment, I find no difficulty in reaching the conclusion that the plaintiff, both by his pleadings and evidence, was entitled to a judgment, and that the defendant has neither, by pleading or evidence, shown any defense thereto. As the deeds were entirely irrelevant as testimony in the case, the court erred in receiving them.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.